Good morning, your honors. May I please the court? Please identify yourself, please, for the record. Attorney Robert F. Jacobs for the position. This case is about a hard-working immigrant who entered the United States in 1989, 20 years ago at the age of 17. He now has a U.S. citizen wife and two U.S. citizen children, and he's presently eligible for three forms of relief, including cancellation of removal, adjustment of status through a labor certification, and adjustment of status through his United States citizen wife. The problems in this case began when the immigration judge back in 2002 violated due process by articulating no reason for denying a request for continuance, a motion for administrative closure, besides the fact that the government opposed it, and issued absolutely no analysis as to why the request for adjustment of status was denied. For those reasons, we believe that the petitioner should be placed in the same position that he was in, non-pro-tunk, on the date of November 15, 2002. Now, after the judge denied the valid good cause continuance request, the petitioner appealed to the Board of Immigration Appeals, and also had filed a motion to reopen subsequent to marrying a U.S. citizen spouse, which rendered him eligible for cancellation of removal because he had acquired a qualifying relative. Tell us what happened with respect to the marriage issue, so far as the IJ and the BIA are concerned. What did the agency do? The agency approved the I-130 family petition, and on December 2, 2005, within 25 days, I filed a joint motion to reopen with the government to request reopening based on that marriage. Well, I guess, let me be more specific. As I look at the record, there's a real question as to whether the agency fully entertained the request to recognize the validity of the marriage. They only looked at a couple of affidavits. They did not look at some of the supplementary materials that were put in the record. Is that your position? Am I stating your position? That is my position with regard to that. Tell us what they looked at and what they did not look at. Well, they looked at the Velarde Pacheco case and claimed that one of the weaknesses that we had was that we didn't have affidavits from outside parties. But in Velarde Pacheco, the petitioner had submitted virtually no documents besides a birth certificate of a child, the I-130 petition, and affidavits from, I believe, neighbors that stated that they were in a lawful marriage. But the petitioner in this case submitted factual joint documents that established that they had commingled their financial assets, which is actually one of the primary aspects of establishing a valid marriage. Okay. So those documents are in the record, but what's your position? Did the VIA or the IGN ever look at them? The VIA in its decision did not. It was actually a very brief decision, and it did not mention any of the supplemental documentation timely filed by the petitioner. And it merely stated that the petitioner failed to produce affidavits from anyone besides themselves. The petitioners did file affidavits themselves, including a bona fide marriage exemption. So it's the absence of any reference to the other documents, not anything that specifically says that they never looked at them? That's correct. There was no admission that they failed to consider the documentation, but there was nothing in the decision that hinted that there was any consideration of those materials. You received a copy of the 28-J letter, didn't you, from the government? Yes, I did. What do you say about the effect of his failure to depart? Well, the first case that was referred in that was the Contreras, excuse me, the Osigura case. And in that case, the alien had merely filed a motion to reopen absent any petition for review pending. The motion to reopen was filed. It was untimely. It was after voluntary departure had expired. And there was no circuit court appeal pending. And then the claim was that there was ineffective assistance of counsel because of the lateness of it. But when the court considered the ineffective assistance argument, one of the primary reasons why it was denied was that they had abandoned the I-140 application, which was the relief that they were seeking in the first place. So the court determined that there was no prejudice, nevertheless. And I think that also influenced their opinion on ineffective assistance of counsel. In this case, we have numerous distinctions, the first of which is that when voluntary departure was granted here, the law in the Ninth Circuit was under Contreras-Aragon, which stated that a petition for review automatically stayed both deportation and voluntary departure. Now, the immigration judge in this case also, when granting voluntary departure, issued his ruling stating that the petitioner would not have to leave the country until all of his appeals were exhausted. And that's contained in the administrative record on page 148, I believe. And then when the BIA issued its decision denying the original appeal on the motion to continue in the administrative closure, the BIA reiterated that the voluntary departure was granted pursuant to the IJ's order, or pursuant to the immigration judge's order, and conditioned upon compliance with the conditions set forth by the immigration judge. So both the judge's decision and the decision by the Board of Immigration Appeals stated that the petitioner didn't have to leave the United States until his appeals were exhausted. Now, in the meantime, there was a new case that was published that was not widely known in the immigration community, and there's numerous attorneys that I've spoken with that have gotten, I guess, dinged with that new case. And in my opinion, that's kind of a gotcha case, because there was nothing that changed at the Ninth Circuit to accommodate that severe change in the law. I would propose that the Ninth Circuit go back to the prior precedential law that stated that there be an automatic stay of removal and voluntary departure, and then upon filing the petition for review, the clerk of the court sends a notice that if you're requesting stay of removal and voluntary departure, you'd be given a 30-day time period within which to file your motion,  and then the voluntary departure would not continue to run unless and until the court issued a ruling denying that motion for voluntary departure, or if it did not receive a motion within that 30-day period. But the practical matter of expecting petitioners to file a motion for stay of voluntary departure within it's actually a 30-day period, but in reality, with our clients, it ends up being about a three-week period. And what's happening with the motions for stay now is that we're expected to basically argue our entire case in the motion for stay. Counsel, you're down to about a minute. Do you want to reserve? Yeah, yes, Your Honor. You may do so. We'll hear from the government. Good morning, and please the court. My name is Jesse Bless. I represent the Attorney General of the United States. I want to start off by saying, in the normal course of events, if this was a normal case and the 9-130 had been approved, while in this case it was in mediation, this would have been a great case for a mediation program and probably would have been sent back on a joint motion to reopen. But we've had subsequent developments. This Court has acknowledged in denying the belated request for a voluntary departure extension that the voluntary departure period expired. And not only did it expire, it expired before we filed this motion to reopen. And the Supreme Court, and in this Court, have held that that withdraws the availability of the ultimate relief the petitioner now seeks, adjustment of status, cancellation of removal, many forms of discretionary relief. And that has taken this case in a context where the petitioner ---- Is that jurisdictional? It's a statutory mandate. So I don't know if it's jurisdictional. It's not really. I don't know if it withdraws this Court. Does that mean that we as a Court have the power to, in effect, give a retroactive stay or simply decide not to enforce it? I would say that's pretty doubtful. The Supreme Court's language is pretty strong in DADA. It said, without exception or excuse, that you cannot toll, excuse, really. I mean, the mandate is clear by Congress. It's also clear in this case that there is a bona fide marriage to a United States citizen. And is there some practical solution? You mentioned at the outset of your comments that mediation would have been the most appropriate route. What's wrong with trying it now? There's no discretion left in the agency to grant or even consider the relief he seeks. That's by statute. There's nothing that can be done. And this was in mediation. And here's what would have happened. That's what I ask. Is this jurisdictional? As Judge Graber has indicated, there is a very significant amount of evidence saying that this wedding was in fact valid and the IJ simply erred in failing to look at all of the supporting documents. I mean, that looks to be to be part of the record here. And I agree. But keep in mind that just the approval of an I-130 doesn't take into account other developments. In this case, the critical development being he agreed to voluntary depart the United States. And he didn't get not only the approval of the I-130, but he didn't move to withdraw from that voluntary departure agreement, nor leave, nor file a timely request in this court to hold that deadline to the extent this court could have done so. And so what we have here is a motion to reopen filed after he has breached the contract. And the Supreme Court has said that's critical because no one's making him subscribe to voluntary departure. No one said you have to get this relief. But if you do grant it, and this is in the Supreme Court's opinion, but if you do want that, if you do want this relief, you have to abide by the contract or withdraw prior to its expiration. Because if you don't, the consequences are severe. And this case highlights the severity of those consequences. And so, you know, it's one of the rules. And in this case, you know, it may seem inequitable, but it's part of the contract. And if you sign for that contract, and you don't have someone who timely files to withdraw from that contract and lets it run, I mean, this is what would have been. He knew he had to do that? Oh, absolutely. Absolutely. What is in the record that shows us that he understood the consequences of not seeking to withdraw from the voluntary departure? Well, the statute was on the book. And the statute is unambiguous. That's it. Unambiguous, as the Supreme Court has said. There's nothing specific that was told to him, as far as you can tell. I believe the warnings are in the board's order. It says if you fail to depart before the period expires, you will be ineligible for these certain forms of relief. And he was representative the entire time. And we knew that he knows because we knew that he knew that there was going to be some problems because he filed a motion in this court on April 5th, 2004, saying, whoa, whoa, whoa, you need to stay my voluntary departure period. He knew it. He knew it. And that's obvious because why otherwise would he request that? And this court said, and it's on October 20th, and the motions panel said, listen, that period has expired. It expired way back in February 6th, 2004. But what if the same order, which has the language, which I assume it does because you're representing it here, is defective? If it were, in fact, filed, if he had exercised the voluntary departure right and so forth and gone through those hoops and we had the merits in front of us, we would have to conclude that there is insubstantial evidence to sustain the determination made by the IJ and the BIA with respect to the validity of the marriage. What about that? Well, I would separate this from the motion to reopen in the agency's view is over because that was filed after the expiration period. Now, the underlying order, which is the request for administrative closure, that was the first order, that resulted in the grant of voluntary departure, that question, that brings up a great issue. And that was one that I would suggest that the agency needs to consider in the first instance. And let me rephrase it so we're perfectly clear, meaning that should the underlying order be defective, the one that resulted in the grant of voluntary departure, what then becomes of the violation, the subsequent violation of that voluntary departure period? That issue is not addressed by the agency in the first instance here. And if it came to that conclusion, probably would be apt for the agency to consider. Now, turning to the- Wouldn't that put the parties back to where they started? So if the procedure that led to the voluntary departure was improper, then all of your arguments about having to live by that voluntary departure would be irrelevant because it would go away. So presumably everybody would start over again on a clean slate to figure out what should happen to this individual who now has a citizen wife and U.S. citizen children and is clearly in a bona fide marriage. So with that possibility, I still don't understand why you think mediation wouldn't work. I haven't spoken, and we don't have contact with the agency. But in my view, his violation of the voluntary departure period has removed him from receiving it in the United States. Even if the entire procedure that led to the voluntary departure was a nullity, I don't understand how what you're saying would follow. In the agency's view, it wouldn't be a nullity because he requested administrative closure. The IG denied it. This Court lacks jurisdiction to consider that issue. And so the order giving rise to the voluntary departure, this Court, that's a jurisdictional issue. This Court does not have jurisdiction to review the underlying order. So for you, you assume on the closure. On the closure. Right. But we do have jurisdiction, do we not, subject to your late file or your 28-J letter reference, to examine whether the agency properly entertained the validity of the marriage documents. Do we not? I would say, O.C. Guerra, the case, it says that the Board is compelled to deny a motion to reopen filed after the expiration of voluntary departure. Unabided by the underlying relief sought. In that case, it was ineffective assistance to counsel. In this case, it is, did the Board properly consider the evidence presented in support of the I-130? It clearly didn't. Isn't that a difference? As I recall, earlier in your comments, you agreed that so far as the merits are concerned, so far as the validity of the marriage is concerned, that the agency failed to review all of the relevant documents. No, I did not represent that. All right. No. What I said was What did you say? I said that subsequent developments would have made this case a good candidate for a joint motion to reopen. But the ultimate fact is that he didn't. On the basis that there was indeed a valid marriage. Well, that the I-130 was ultimately approved subsequent to proceedings. That is an effect that I don't know what evidence they were, did they supplement, what evidence, but what the Board considered, I don't think there was sufficient evidence. No, I think the Board properly would have concluded, based on minimal evidence presented to it, that no, it was not an overwhelmingly supportive of a bona fide marriage exception. But I don't think there's much, there's absolutely no facts that distinguish this case from Oseguera. Because the critical fact in that case was a motion to reopen filed for adjustment of status after the period of voluntary departure has expired. That's what we have here. And the Board is compelled to deny a motion to reopen when that happens. And this is a recent case. You know, I don't see how we can get around that. I really don't. So, thank you. Thank you, Counsel. Mr. Jacobs, you have some reserve time. Thank you, Your Honor. Your Honor, the government, first of all, has stated that the voluntary departure is a contract, and I believe it also is a contract. However, when the contract was entered into, when the petitioner was in removal proceedings, the contract was under prior law, which stated that the stay is automatically granted upon filing the petition for review. Furthermore, the Dada v. McKay's case that he referred to, saying that all we have to do is withdraw the voluntary departure prior to the expiration, that case was published in 2008. Our petition for review was in 2004. That was never an option provided to the private bar prior to 2008. Also, if the court believes that voluntary departure does expire and wipes out all forms of available relief, then I committed ineffective assistance of counsel. And it's clear on its face. It's clear on the record. And there should be some consideration for that. Perhaps even a matter of lazada motion or a matter of campeon, Attorney General decision 2009. There's no reason why my client should suffer from my mistake. However, I think the more appropriate determination would be upholding the law that was in place at the time of the voluntary departure contract. Thank you, counsel. The case just argued will be submitted for decision, and we'll hear argument next in Yee v. Holder.
judges: Goodwin, O'scannlain, Graber